**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

**CARSON BLOCK,**

**Plaintiff,**

**v.**

**U.S. SECURITIES AND EXCHANGE COMMISSION and U.S. DEPARTMENT OF JUSTICE,**

**Defendant.**

Civil Action No. 1:22-cv-1314-DAE

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**
**AND MEMORANDUM OF LAW IN SUPPORT**

# TABLE OF CONTENTS

Page

I. INTRODUCTION AND RELIEF REQUESTED ....................1

II. FACTS ....................1

A. Background ....................1

B. FOIA Requests at Issue. ....................4

1. SEC Request 22-1904 (May 13, 2022) ....................4

2. SEC Request 23-2497 and 23-2498 (June 7, 2023). ....................5

3. DOJ Request CRM-301760741 (May 13, 2022) ....................6

4. DOJ Request CRM-301961545 (June 7, 2023) ....................7

C. Procedural Background ....................7

III. ARGUMENT ....................8

A. FOIA Summary Judgment Standards ....................8

B. The Agencies Improperly Withheld Responsive Records ....................9

1. DOJ's Blanket Glomar Response Is Unjustified ....................9

2. The SEC Has Improperly Withheld and Redacted Information ....................14

3. SEC Cannot Meet Its Burden To Show Its Search Was Adequate. ....................17

C. Block Is Eligible for Attorneys' Fees as a Prevailing Party. ....................18

IV. CONCLUSION ....................19

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*A.C.L.U. v. D.O.D.*,
389 F. Supp. 2d 547 (S.D.N.Y. 2005)....10

*Adelante Ala. Worker Ctr. v. D.H.S.*,
376 F. Supp. 3d 345 (S.D.N.Y. 2019)....12, 13

*Agility Pub. Warehousing Co. K.S.C. v. N.S.A.*,
113 F. Supp. 3d 313 (D.D.C. 2015)....11

*Batton v. Evers*,
598 F.3d 169 (5th Cir. 2010).... *passim*

*Batton v. I.R.S.*,
718 F.3d 522 (5th Cir. 2013)....18, 19

*Church of Scientology of Tex. v. I.R.S.*,
816 F. Supp. 1138 (W.D. Tex. 1993)....14

*Citizens for Resp. & Ethics in Wash. v. D.O.J.*,
746 F.3d 1082 (D.C. Cir. 2014)....13, 16

*Cooper Cameron Corp. v. U.S. Dep't of Lab., Occup. Safety & Health Admin.*,
280 F.3d 539 (5th Cir. 2002)....8, 9

*Dep't of Air Force v. Rose*,
425 U.S. 352 (1976)....8, 12, 14

*Elec. Privacy Info. Ctr. v. N.S.A.*,
678 F.3d 926 (D.C. Cir. 2012)....11

*Gardels v. C.I.A.*,
689 F.2d 1100 (D.C. Cir. 1982)....11

*Hagar v. F.B.I.*,
170 F.4th 946 (5th Cir. 2026)....8

*Highland Cap. Mgmt., LP v. I.R.S.*,
408 F. Supp. 3d 789 (N.D. Tex. 2019)....14, 17

*Huddleston v. F.B.I.*,
No. 4:20-cv-00447, 2022 WL 4593084 (E.D. Tex. Sep. 29, 2022)....10

*Huddleston v. F.B.I.*,
No. 4:20-CV-447, 2024 WL 3834383 (E.D. Tex. Aug. 15, 2024)........................................11

*In re CrowdStrike Holdings, Inc. Sec. Litig.*,
816 F. Supp. 3d 683 (W.D. Tex. 2026)........................................................................3

*Judicial Watch, Inc. v. U.S. Secret Serv.*,
579 F. Supp. 2d 182 (D.D.C. 2008)..........................................................................10

*Lame v. U.S. D.O.J.*,
654 F.2d 917 (3d Cir. 1981)....................................................................................10

*McNamera v. D.O.J.*,
974 F. Supp. 946 (W.D. Tex. 1997)..........................................................................11

*N.L.R.B. v. Robbins Tire & Rubber Co.*,
437 U.S. 214 (1978)....................................................................................................8

*Oglesby v. Dep't of Army*,
920 F.2d 57 (D.C. Cir. 1990)....................................................................................17

*Phillippi v. CIA*,
546 F.2d 1009 (D.C. Cir. 1976)...........................................................................9, 11

*Phillippi v. CIA*,
655 F.2d 1325 (D.C. Cir. 1981)...................................................................................9

*Pickard v. D.O.J.*,
653 F.3d 782 (9th Cir. 2011)....................................................................................11

*Polnac v. City of Sulphur Springs*,
555 F. Supp. 3d 309 (E.D. Tex. 2021)........................................................................3

*Schulze v. F.B.I.*,
No. 1:05-CV-0180 AWI GSA, 2010 WL 2902518 (E.D. Cal. July 22, 2010).......................10

*Socolov v. U.S. D.O.J.*,
No. 1:19-CV-419-DAE, 2025 WL 4672293 (W.D. Tex. Feb. 19, 2025)...............9, 12, 14, 16

*Tex. Pub. Pol'y Found. v. Dep't of State*,
136 F.4th 554 (5th Cir. 2025)....................................................................................16

*U.S. D.O.D. v. Fed. Lab. Relations Auth.*,
510 U.S. 487 (1994)....................................................................................................8

*U.S. D.O.J. v. Reporters Committee for Freedom of the Press*,
489 U.S. 749 (1989)................................................................................................8, 9

*U.S. ex rel. Lam v. Tenet Healthcare Corp.*,
481 F. Supp. 2d 673 (W.D. Tex. 2006)....................3

*Verde v. F.A.A.*,
287 F. Supp. 3d 661 (S.D. Tex. 2018)....................18

*Weisberg v. U.S. D.O.J.*,
705 F.2d 1344 (D.C. Cir. 1983)....................18

*Zlotnick v. TIE Commc'ns*,
836 F.2d 818 (3d Cir. 1988)....................2

**Federal Statutes**

5 U.S.C.
§ 552(a)(4)(B)....................9, 13, 14, 17
§ 552(a)(4)(E)....................7, 18, 19, 20
§ 552(b)(6)....................6, 12
§ 552(b)(7)(C)....................6, 12

## I. INTRODUCTION AND RELIEF REQUESTED

This case arises from Plaintiff Carson Block's Freedom of Information Act ("FOIA") requests to the Securities and Exchange Commission and Department of Justice. Block sought records related to efforts by a controversial law professor and business interests to persuade government regulators to adopt a new theory of securities-fraud enforcement, one targeting publishers of investment research and their affiliated investment management businesses. In response, DOJ has claimed it cannot confirm or deny the existence of *any* responsive records—an absurd position in light of publicly available information showing it has hired the professor as an expert, communicated with him and others about his "short and distort" theory, and adopted it in disclosed investigations and public prosecutions. SEC failed to provide any records until Block brought this suit; since then, it has improperly withheld documents, and its search for responsive records has proven inadequate.

Block now moves for summary judgment. He seeks an order declaring DOJ and SEC have violated FOIA and requiring both agencies to fully search for and provide responsive records by a date certain or, alternatively, to submit certain records for in camera review. He also seeks a ruling that he is a prevailing party eligible to recover his attorneys' fees, because his suit was the catalyst for SEC's disclosures to date.

## II. FACTS

### A. Background

Carson Block is the founder and CEO of Muddy Waters, LLC, a journalistic organization that publishes investigative research about publicly traded companies, including reports that reveal fraud, malfeasance and corporate wrongdoing. *See* Declaration of Carson Block ("Block Dec.") ¶ 2. Through affiliated companies, Block also takes investment positions that reflect his research. *Id.* Block is an outspoken free-speech advocate and proponent of activist short-

selling,[1] which he believes protects market integrity and holds publicly traded companies accountable and transparent. *Id.* That view is shared at the highest levels of securities regulation, including by the former SEC Chairman. *Id.* ¶ 3 & Ex. 1.

This case primarily concerns FOIA requests Block made for communications between federal agencies and Joshua Mitts, a Columbia University law professor and critic of activist short selling. Block Decl. ¶ 4. Block believes Mitts' critique of short selling is inaccurate and conflicted, and he has published a detailed refutation documenting "material misrepresentations, omissions of fact, lack of academic integrity, and consistently incorrect statements" in Mitts' "short-and-distort" research. *Id.* ¶ 4 & Ex. 2. Mitts' methodology has also been rejected by an English court, which found an "inherent weakness" in his analysis and described his conclusions as "overly simplistic." *Id.* ¶ 5. Block's requests also sought communications SEC or DOJ had with former bank executive Steven A. Sugarman, whom Block believes encouraged agencies for self-interested reasons to adopt Mitts' flawed theories. *Id.* ¶¶ 8-9.

Block made the FOIA requests to uncover the extent to which Mitts' views have taken root among government regulators at the SEC and DOJ. Block Decl. ¶ 6. The requests concern matters of substantial public interest. Mitts publicly advertises his "extensive experience supporting the U.S. Department of Justice." Declaration of Eric M. Stahl ("Stahl Decl.") Ex. 1 (Dkt. 23, First Amended Complaint) ("FAC") p. 9 n.4; *id*. Ex. 5 (Mitts C.V.). Through his company M. Analytics, Mitts has been retained at taxpayer expense as an expert witness for DOJ. Stahl Decl. ¶ 7 & Ex. 6. He has communicated with an SEC Commissioner and staff about short selling in emails, rulemaking petitions and presentations suggesting short selling

[1] Short selling is a common investment strategy in which an investor "seeks to profit by trading stocks which he expects to decline in value" for any number of reasons. *Zlotnick v. TIE Commc'ns*, 836 F.2d 818, 820 (3d Cir. 1988).

amounts to market manipulation. Stahl Decl. Ex. 1 ¶ 17 & pp. 29-73;[2] *id.* Ex. 2 (Dkt. 28 (Answer to FAC)) ¶ 17 (admitting Mitts communications with SEC). Mitts' advocacy to SEC has been the subject of news coverage. *Id.* ¶ 8 & Ex. 7.

Block's FOIA requests sought to shed light on the extent Mitts' critique of short selling influenced government officials. SEC records produced to date show Mitts found a ready audience among both SEC and DOJ: he gave presentations on his "Short and Distort" paper to the SEC in June 2019 (Stahl Decl. ¶ 9 & Ex. 8), as well as to SEC and DOJ officials in May 2022, August 2022 and May 2023. *Id.* Ex. 9. Notably, *all* of the attendees at his 2022-2023 "short and distort" presentations were involved in the investigation and July 2024 indictment of short seller Andrew Left. *Compare id.* Exs. 8, 9 (listing attendees) with *id.* ¶ 10 & Ex. 10 (*Left* docket, listing attorneys); Ex. 11 (SEC press release, announcing charges); Ex. 12 (*United States v. Left* indictment).[3] Left was convicted of securities fraud on June 1, 2026. *Id.* Ex. 13 (Verdict).[4] Neither SEC nor DOJ has disclosed the substance of any of the 2022-2023 Mitts presentations.

---

[2] Citations to attachments to the FAC (Stahl Decl. Ex.1) refer to the ECF header page number.

[3] Exhibits 8-12 show SEC's Wendy Pearson organized the Mitts joint "short and distort" presentations, and that SEC officials Sarah Nilson, Carina Chambarry and Michael Barnes were "required attendees." All four led the investigation into Left, according to the SEC press release announcing the charges. The other "required attendees" were DOJ attorneys Lauren Archer, Alexander Schwab and Matthew Reilly, who prosecuted Left.

[4] Block requests judicial notice as follows. First, the Court may take judicial notice of the material published on governmental websites, including the SEC press release (Stahl Decl. Ex. 11). *See In re CrowdStrike Holdings, Inc. Sec. Litig.*, 816 F. Supp. 3d 683, 699 n.7 (W.D. Tex. 2026) (citing authority). Second, the Court may take judicial notice of indictments and court filings from other proceedings (Stahl Decl. Exs. 10, 12, 13), for the purpose of establishing the fact that judicial action was taken. *Polnac v. City of Sulphur Springs*, 555 F. Supp. 3d 309, 327-28 (E.D. Tex. 2021). Finally, Block requests judicial notice of news articles and media coverage cited herein for the fact of publication and evidence of information that is in the public domain (Stahl Decl. Ex. 7; Block Decl. Exs. 1, 3). *See U.S. ex rel. Lam v. Tenet Healthcare Corp.*, 481 F. Supp. 2d 673, 680 (W.D. Tex. 2006) (citing authority).

**B. FOIA Requests at Issue.**

**1. SEC Request 22-1904 (May 13, 2022)**

Block submitted a FOIA request to the SEC on May 13, 2022 seeking, in relevant part, email correspondence back to January 1, 2018, between the SEC and Mitts, his company M. Analytics, Marc Cohodes, Marlon Paz, or the law firm Morrison Foerster.[5] Stahl Decl. Ex. 1 (FAC) p. 15. SEC designated the request No. 22-01904-FOIA ("Request 1904"). *Id.* p. 18.

On June 30 and July 1, 2022, SEC FOIA officials and Block's counsel communicated regarding search terms to use for Request 1904. *Id.* pp. 20-22. But the communication stopped then, and by the time this action was filed on December 14, 2022, SEC had made *no* further contact about Request 1904, and failed to produce *any* responsive record to Block. *See id.* Ex. 3 (initial Complaint, Dkt. 1) ¶ 12 & Ex. 4 (Answer, Dkt. 17) ¶ 12. It is undisputed that responsive records existed: SEC admits Mitts had "repeated contact and communications" with the agency over rulemaking petitions and staff presentations. *Id.* Exs. 1, 2 ¶¶ 17. Indeed, Block's complaints in this suit attached some email correspondence between Mitts and the SEC, demonstrating that responsive records exist. *See id.* Ex. 1 pp. 29-73; Ex. 2 ¶ 13.

SEC delayed producing a single record responsive to Request 1904 for more than two years after the request, and 18 months after Block was forced to bring this suit. *See* Ex. 2 ¶ 17 (March 13, 2024 Answer: "Defendants admit that they have not produced responsive records."). On June 7, 2024, pursuant to a scheduling order (Dkt. 30), SEC made an initial 13-page production. *Id.* Ex. 14. On July 3, 2024, SEC provided two additional pages, characterizing it as

---

[5] Cohodes is another activist short seller. Paz was an SEC official who later moved to Latham & Watkins, which represented Sugarman in connection with shareholder suits against Banc of California, discussed below. Morrison Foerster represented Banc of California in the matter. Block Decl. ¶ 7.

its "final" production responsive to Request 1904. *Id*. Ex. 15. Block questioned the finality, and the absence of a Vaughn index, which SEC provided on November 27, 2024. *Id.* ¶ 13 & Ex. 16. The parties continued to confer on revised search terms, and SEC provided additional records through April 23, 2026, when it made a seventh and "final" production. *Id*. ¶ 14.

**2. SEC Request 23-2497 and 23-2498 (June 7, 2023).**

On June 7, 2023, Block submitted an additional FOIA Request to the SEC, seeking emails back to January 1, 2018, between the SEC and (1) Paz, Manuel Abascal or Alex Wyman (at their law firm email addresses);[6] and (2) Steven A. Sugarman, his company The Change Co. ("Change"), and eight other named individuals associated with the company. Block Decl. ¶ 8; Stahl Decl. Ex. 1 ¶ 24 & p. 95. The SEC designated these requests No. 23-02497 ("Request 2497") and No. 23-02498 ("Request 2498") respectively. *Id.* ¶ 25 & p. 98; Stahl Decl. Ex.2 (Answer) ¶¶ 24-25.[7]

Sugarman is a former CEO of Banc of California and an aggressive critic of short sellers, including Block, who Sugarman has publicly blamed for a series of anonymous 2016 blog posts that devalued the bank's stock and led to an SEC investigation and a shareholder class action. Block Decl. ¶ 9. Sugarman issued a third-party subpoena to Muddy Waters in that lawsuit, and documents produced by Muddy Waters in response were later disclosed in violation of a protective order, leading to a civil contempt finding against Sugarman and his counsel. *Id*. Block made Request 2498 (and a similar request to DOJ, discussed below) because he believed

---

[6] Like Paz, Abascal and Wyman were attorneys at Latham & Watkins, and represented Sugarman in connection with shareholder suits against Banc of California and related legal matters. Block Decl. ¶ 7(c).

[7] Additional portions of Block's FOIA requests to the SEC (labeled Requests 22-01905 and 23-02499) are not subject to this motion. *See* Stahl Decl. Ex. 1 p. 7 n.2, 3.

Sugarman and Change were encouraging a "short and distort" investigation into Muddy Waters, based on theories advocated by Mitts. *Id.* DOJ and SEC did launch civil and criminal investigations into Muddy Waters in or before 2021, but to Block's knowledge they have not been active since early 2023, and it was publicly reported in 2024 that the investigations have been closed without any action. *Id.* ¶ 10 & Ex. 3.

In July 2023, the SEC and Block's counsel communicated regarding additional search terms relevant to these Requests. *See* Stahl Decl. Ex. 1 pp. 100-101. On September 29, 2023, SEC responded that after a supposedly "thorough search," it had found no records responsive to Request 2498. *Id*. Ex. 17. As to Request 2497, SEC failed to provide any responsive records for over a year after the requests. On July 3, 2024, nearly six months after Block had amended his complaint, SEC produced 150 pages of emails responsive to Request 2497. *Id.* Ex. 18.

**3. DOJ Request CRM-301760741 (May 13, 2022)**

On May 13, 2022, Block asked DOJ for (1) emails between DOJ's Criminal Division and Mitts, M. Analytics, Cohodes, Paz or anyone at Morrison Foerster, and (2) documents related to "consulting services provided by Joshua Mitts and/or M. Analytics," both back to January 1, 2018. Stahl Decl. Ex. 1 ¶ 30 & pp. 103-104; Ex. 2 ¶ 30. The request for records related to consulting services that, as noted above, Mitts promoted online, including in his publicly accessible CV. *See* Stahl Decl. Ex. 5.

DOJ waited eight months, until January 17, 2023, to even acknowledge the request (designated CRM-301760741 ("Request 741")). Stahl Decl. Ex. 1 ¶ 31 & p. 106; Ex. 2 ¶ 31. DOJ refused to "confirm nor deny the existence of such records pursuant to [FOIA] Exemptions 6 and 7(C)," 5 U.S.C. § 552(b)(6), (7)(C). *Id.* Ex. 1 ¶ 31. DOJ asserted that "Even to acknowledge the existence of law enforcement records regarding another individual could reasonably be expected to constitute an unwarranted invasion of personal privacy. This is our

standard response to such requests and should not be taken to mean that records do, or do not, exist." *Id.*

Block administratively appealed this "Glomar response." Stahl Decl. Ex. 1 pp. 109-115. DOJ denied the appeal on September 11, 2023. *Id*. p. 122-123.

**4. DOJ Request CRM-301961545 (June 7, 2023)**

On June 7, 2023, Block submitted an additional FOIA Request to DOJ (similar to his SEC Requests 2497 and 2498), seeking emails back to January 1, 2018 between the DOJ's Criminal Division and (1) Abascal, Paz, or Wyman, and (2) Sugarman, Change, or eight other Change associates. Stahl Decl. Ex. 1 ¶ 35 & pp. 130-131.

On August 1, 2023, DOJ acknowledged the request, designated as CRM-301961545 ("Request 545"), and again refused to confirm or deny existence of any responsive records, on the same grounds as Request 741. *Id*. Ex. 1 ¶ 36 & pp. 136-137; Ex. 2 (Answer) ¶ 36.

On October 26, 2023, Block administratively appealed the response to Request 545. *Id*. Ex. 1 pp. 139-142. DOJ acknowledged receipt the next day. *Id.* Ex. 19. Block has no record of receiving a substantive response to that appeal. *Id.* ¶ 17 & Ex. 1 ¶ 38.

**C. Procedural Background**

Block filed this FOIA suit against SEC on December 14, 2022, based on Request 1904. Stahl Decl. Ex. 3. The FAC, filed January 17, 2024, added DOJ as a defendant, and added claims based on the DOJ requests and the June 7, 2023 requests to SEC. *Id.* Ex. 1.

The FAC asserts a cause of action for violation of FOIA, based on both agencies' failure to timely provide agency records responsive to (as relevant to this Motion) SEC Requests 1904, 2497, 2498 and DOJ Requests 741 and 545. *Id.* ¶¶ 40-46. Block seeks an injunction and declaratory judgment preventing the agencies from continuing to improperly withhold records, and attorneys' fees as provided by 5 U.S.C.§ 552(a)(4)(E). *Id.* p. 12.

No substantive motions have been filed to date. After multiple meetings of counsel, SEC produced additional records responsive to Request 1904. *See* §§ II.A, B.1, *supra*; Dkt. Nos. 31, 37, 39, 43, 47, 49 (joint status reports). DOJ maintains its refusal to confirm or deny the existence of any records responsive to Requests 741 and 545, despite requests from Plaintiff to reconsider in light of the Left conviction and other developments confirming the existence of DOJ "short-and-distort" investigations and communications with Sugarman. *See* Stahl Decl. ¶ 18 & Exs. 20, 21; *infra*, § III.B.1. This motion is brought pursuant to a stipulated scheduling order for dispositive motions, entered by the Court on July 31, 2026. Dkt. 56.

## III. ARGUMENT

### A. FOIA Summary Judgment Standards

FOIA addresses the "mushrooming growth of Government secrecy." H.R. Rep. No. 89-1497, at 2 (1966). The statute requires full disclosure of requested records except to the extent they contain information that is exempt under clearly delineated statutory language. *See U.S. D.O.D. v. Fed. Lab. Relations Auth.*, 510 U.S. 487, 494 (1994) ("[D]isclosure, not secrecy, is the dominant objective" of FOIA), quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)). FOIA's purpose is to permit citizens to know "what their government is up to." *U.S. D.O.J. v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 773 (1989) (citations omitted). It serves "to 'ensure an informed citizenry,' 'check against corruption,' and 'hold the governors accountable to the governed[.]'" *Hagar v. F.B.I.*, 170 F.4th 946, 949 (5th Cir. 2026) (quoting *N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978)). FOIA's exemptions "are explicitly limited by statute and should be construed narrowly." *Batton v. Evers*, 598 F.3d 169, 175 (5th Cir. 2010).

"Summary judgment resolves most FOIA cases[.]" *Cooper Cameron Corp. v. U.S. Dep't of Lab., Occup. Safety & Health Admin.*, 280 F.3d 539, 543 (5th Cir. 2002). "The statute

'expressly places the burden "on the agency to sustain its action" and directs the district courts to "determine the matter de novo," giving no deference to the agency's determinations."' *Id.* (quoting *Reporters Committee*, 489 U.S. at 755; *Socolov v. U.S. D.O.J.*, No. 1:19-CV-419-DAE, 2025 WL 4672293, at *2 (W.D. Tex. Feb. 19, 2025) ("the burden of establishing the validity of a decision to withhold information remains with the agency")). To meet its burden an agency must provide detailed affidavits identifying the records at issue and why claimed exemption applies; "an agency's conclusory and generalized assertion[s] on a motion for summary judgment" do not suffice, "even if those assertions are uncontroverted." *Id.* (quoting *Batton*, 598 F.3d at 175); 5 U.S.C. § 552(a)(4)(B).

As part of its de novo review of agency FOIA decisions, a court may examine disputed records in camera to determine whether they should be disclosed. 5 U.S.C. § 552(a)(4)(B).

### B. The Agencies Improperly Withheld Responsive Records

#### 1. DOJ's Blanket Glomar Response Is Unjustified

In response to Block's FOIA requests, DOJ declines to "confirm []or deny the existence of" any DOJ communications with Mitts, Sugarman and others, and of any records related to consulting services provided to DOJ by Mitts and his company. Stahl Decl. Ex. 1 pp. 106, 136. DOJ asserts that this Glomar response[8] is a "standard response" to requests "to acknowledge the existence of law enforcement records regarding another individual[.]" *Id.* But this Glomar

[8] The term originated in *Phillippi v. CIA*, 655 F.2d 1325 (D.C. Cir. 1981), which stated the CIA could refuse to acknowledge whether it was involved with a ship called the *Glomar Explorer*. Even there, the D.C. Circuit found the response inadequate and directed the CIA to provide a detailed public declaration substantiating its response. *Phillippi v. CIA*, 546 F.2d 1009, 1015 (D.C. Cir. 1976) ("*Phillippi I*"). On remand, the CIA changed its position and disclosed requested records. *Phillippi* , 655 F.2d at 1328.

response is manifestly not "standard;" it is a blanket refusal to acknowledge the reality of records already known to exist from SEC productions, public criminal proceedings, and other sources.

The Fifth Circuit "has yet to directly address whether an agency may issue a Glomar response to a FOIA request[.]" *Huddleston v. F.B.I.*, No. 4:20-cv-00447, 2022 WL 4593084, at *21 n.12 (E.D. Tex. Sep. 29, 2022). Where Glomar responses are permitted, they are limited, because they constitute "the most extreme departure from the policy purpose of the FOIA to inform and promote transparency in governmental affairs." *Schulze v. F.B.I.*, No. 1:05-CV-0180 AWI GSA, 2010 WL 2902518, at *20 (E.D. Cal. July 22, 2010) (citing *Lame v. U.S. D.O.J.*, 654 F.2d 917, 921 (3d Cir. 1981)).

Courts recognize Glomar responses "encourage an unfortunate tendency of government officials to over-classify information, frequently keeping secret that which the public already knows, or that which is more embarrassing than revelatory of intelligence sources or methods." *A.C.L.U. v. D.O.D.*, 389 F. Supp. 2d 547, 561 (S.D.N.Y. 2005); *Judicial Watch, Inc. v. U.S. Secret Serv.*, 579 F. Supp. 2d 182, 186 (D.D.C. 2008) (rejecting Secret Service's Glomar response because its "argument that knowledge of the mere existence or absence of [records] poses a security risk does not hold water"). This "unfortunate tendency" becomes more pronounced in contexts removed from the Glomar response's national-security origins. For example, DOJ is not permitted to rely on a blanket Glomar response to a request for records related to a law-enforcement informant who has already testified:

> The government basically argues that federal law enforcement agencies should be able to develop a case for the United States Attorney, have their agents and confidential informants testify at trial in open court about the identity and activities of those confidential informants, but then refuse to confirm or deny the existence of records pertaining to that confidential informant. We cannot abide such an inconsistent and anomalous result.

*Pickard v. D.O.J.*, 653 F.3d 782, 787-88 (9th Cir. 2011); *see also McNamera v. D.O.J.*, 974 F. Supp. 946, 953-54 (W.D. Tex. 1997) (Glomar response is "more universally sanctioned, in cases involving the CIA … Other agencies have not fared as well.") (citing cases).

When the government asserts a Glomar response, it bears a high burden to show that acknowledging the existence of a record threatens an interest protected by a FOIA exemption. The agency must do so with "affidavits that contain reasonable specificity of detail rather than merely conclusory statements" sufficient to "justify the Glomar response based on general exemption review standards established in non-Glomar cases," *Elec. Privacy Info. Ctr. v. N.S.A.*, 678 F.3d 926, 931 (D.C. Cir. 2012) (internal quotation marks & citation omitted), "explaining in as much detail as is possible the basis for its claim that it can be required neither to confirm nor to deny the existence of the requested records." *Phillippi*, 546 F.2d at 1013. The agency's judgment must "objectively survive[] the test of reasonableness, good faith, specificity, and plausibility." *Gardels v. C.I.A.*, 689 F.2d 1100, 1105 (D.C. Cir. 1982).

In response to Block's request during this litigation to reconsider its Glomar response, DOJ to date has simply repeated its conclusory recitations that "even to acknowledge the existence of law enforcement records regarding another individual" would invade personal privacy. Stahl Decl. Ex. 22.

Even if DOJ offers a sufficient affidavit in response to this motion, Glomar responses "may be challenged in two distinct but related ways." *Huddleston v. F.B.I.*, No. 4:20-CV-447, 2024 WL 3834383, at *7 (E.D. Tex. Aug. 15, 2024) (quoting *Agility Pub. Warehousing Co. K.S.C. v. N.S.A.*, 113 F. Supp. 3d 313, 326 (D.D.C. 2015)). First, a plaintiff may challenge the "assertion that confirming or denying the existence of any records would result in a cognizable harm under a FOIA exemption." *Id.* "Alternatively, or in addition, a plaintiff may demonstrate

that the agency has 'officially acknowledged' the existence of a requested record previously." *Id.* Block would have no difficulty rebutting the DOJ's Glomar response here on both grounds, for similar reasons.

DOJ rests its Glomar response on FOIA privacy-based Exemptions 6 and 7(C). Stahl Decl. Ex. 1 pp. 106, 136; *see* 5 U.S.C. § 552(b)(6) (protecting "files the disclosure[s] of which would constitute a clearly unwarranted invasion of personal privacy"); § 552(b)(7)(C) (protecting "records or information compiled for law enforcement purposes" that "could reasonably be expected to constitute an unwarranted invasion of personal privacy"). Withholding information under either exemption requires the agency to "demonstrate that release of the information would constitute a clearly unwarranted invasion of the privacy interests of the relevant individuals, and that these personal privacy interests are not outweighed by any relevant interest of the public." *Socolov*, 2025 WL 4672293, at *9. The threat to personal privacy interests must be "more palpable than mere possibilities." *Rose*, 425 U.S. at 380 n.19.

DOJ's blanket refusal to identify the existence of communications responsive to Block's FOIA request does not plausibly further *any* privacy interest. This is particularly salient with respect to records relating to Mitts, whose services to DOJ are a matter that he personally promotes online. Stahl Decl. ¶ 6 & Ex. 5. Mitts can claim no privacy interest in communications with DOJ, which include expert witness contracts that DOJ has publicly disclosed (*id.* Ex. 6), and joint presentations to SEC and DOJ on his "short and distort" theory that have been disclosed in records released by SEC. *See id.* Exs. 8, 9; *supra* n.3; *Adelante Ala. Worker Ctr. v. D.H.S.*, 376 F. Supp. 3d 345, 368 (S.D.N.Y. 2019) (outside experts hired by government who refer to their work publicly have at most "slight" public interest that does not justify withholding). On the other side of the scale, "the public has a real interest in

understanding whose judgment is being employed" by agencies when they engage consultants like Mitts. *Id.*; *see supra*, § II.A.

DOJ's blanket privacy-based Glomar response also fails because the existence of responsive DOJ records regarding at least some individuals who have been the subject of or associated with "short and distort" investigations—including Sugarman, Left, and Block himself—are already matters known to the public. Sugarman has confirmed the existence of his communications with DOJ and SEC related to those agencies' investigations, including in a December 6, 2024 letter sent on his behalf by attorney Abascal that acknowledged Muddy Waters records were produced to SEC and DOJ in 2019 and 2020. Block Decl. ¶ 9; Stahl Decl. Ex. 21. Left has been convicted after a public trial. *Id.* Exs. 10-13. Block also acknowledges he and Muddy Waters were the subject of a now-concluded investigation into short selling activity that encompassed more than a dozen firms. Block Decl. ¶ 10 & Ex. 3. Such acknowledgements preclude a categorial Glomar response as to the existence of the records. *Citizens for Resp. & Ethics in Wash. v. D.O.J.*, 746 F.3d 1082, 1091-92 (D.C. Cir. 2014).

Finally, DOJ cannot seriously contend that any harm cognizable under Exemptions 6 or 7C would arise from its acknowledgement of the *existence* of records showing its communications with Mitts in connection with "short and distort" presentations he made to DOJ officials. Again, the existence of such records has been confirmed by SEC, including in records produced in this litigation. Stahl Decl. Ex. 9.

Accordingly, Block seeks summary judgment granting a declaration that DOJ violated FOIA by relying on a blanket Glomar response and failing to search for or produce records responsive to Requests 741 and 545. Pursuant to 5 U.S.C. § 552(a)(4)(B), it should enter an order requiring DOJ to conduct a thorough search for responsive records, and to produce all

responsive nonexempt records (or portions of records), and a *Vaughn* index of each record or portion of record withheld under claim of exemption.

**2. The SEC Has Improperly Withheld and Redacted Information**

Unlike DOJ, SEC has produced some records responsive to Block's requests—including records that confirm the existence of "short-and-distort" investigations that DOJ baselessly claims it cannot acknowledge. But SEC has withheld and redacted records responsive to Block's requests on grounds that fail to meet its "burden of establishing the validity of a decision to withhold information[.]" *Socolov*, 2025 WL 4672293, at *2; 5 U.S.C. § 552(a)(4)(B).

Block objects specifically to 90 pages of records that SEC withheld in whole or in part from its response to Request 1904, as set out in a *Vaugn* index produced on November 27, 2024. Stahl Decl. Ex. 16. SEC asserts these records are subject to FOIA Exemptions 6 and 7C, the same privacy objections DOJ relies on for its blanket Glomar withholding. As noted above, withholding information under either exemption requires the agency to show disclosure "would constitute a clearly unwarranted invasion of the privacy interests of the relevant individuals," *Socolov*, 2025 WL 4672293, at *9, and that the privacy threat must be "more palpable than mere possibilities." *Rose*, 425 U.S. at 380 n.19. Moreover, an agency relying on a *Vaughn* index must "adequately describe the record, state what exemption the agency claims and explain why the agency believes the record falls within the exemption," so that the requester has "a meaningful opportunity to contest the agency's claim of exemption" and the court can "effectively and efficiently evaluate whether a withheld record is exempt[.]" *Church of Scientology of Tex. v. I.R.S.*, 816 F. Supp. 1138, 1147 (W.D. Tex. 1993); *see Highland Cap. Mgmt., LP v. I.R.S.*, 408 F. Supp. 3d 789, 809 (N.D. Tex. 2019) (rejecting portions of *Vaughn* index where agency did "very little to explain to the court just exactly how disclosing any of these documents would seriously impair federal tax administration," but "simply repeats" conclusory assertions).

SEC's withholding fails under these standards. Its *Vaughn* index provides only an identical, conclusory explanation for every withheld document, alleging the information "could allow the public to identify witnesses and other people associated with a law-enforcement investigation" and that the public interest in the information is outweighed by individual privacy interests. Stahl Decl. Ex. 16. This boilerplate explanation fails to adequately describe the record, and provides no basis to evaluate the claimed exemptions.

SEC partially disclosed 44 of the 90 pages identified in the *Vaughn* index. These partial emails strongly suggest that the privacy exemptions claimed by SEC are *not* applicable. Stahl Decl. ¶ 20 & Ex. 23 (December 19, 2024 production). Some of the emails, between the SEC and an outside attorney, discuss an unidentified subpoena. *See*, *e.g.*, *id*. pp. 2-18 (corresponding to pp. 13-29 of the *Vaughn* index, Ex. 16). The content of the emails, and the fact that they were identified in response to Request 1904 seeking SEC communications with attorneys representing Sugarman and Banc of California, suggests the records may relate to subpoenas and communications disclosed in Abascal's December 6, 2024 letter to Muddy Waters' counsel. Stahl Decl. Ex. 21. The timing of other withheld records (mid-2019 to mid-2020) likewise corresponds with the period when Sugarman and the bank were known to be providing information to the SEC. *Id.*; *see* Ex. 23 pp. 1, 19-30 (corresponding to Ex. 16, *Vaughn* index pp. 12, 36-41, 44-49). Additional partially redacted emails discuss a publicly filed civil complaint against another short seller. *See id.* Ex. 23 pp. 31-44 (corresponding to Ex. 16, *Vaughn* index pp. 52-55, 57-58, 61-68).

For reasons discussed above with respect to DOJ's blanket withholding, there is no privacy intrusion in disclosing a record associating a person with an investigation when that association is already public, or acknowledged by the person. To the extent any of the 90

withheld or redacted pages disclose information about communications with or investigations involving Sugarman, Banc of California, Block, Muddy Waters, or anyone else who has acknowledged being an investigation target or is already publicly associated with such communications, there is no privacy risk from disclosure. And even if there were, it would be substantially outweighed by the public interest in how the government performs investigations, including the information on which it relies to pursue new investigative theories. *See supra* § III.B.1; *Citizens for Resp. & Ethics in Wash.*, 746 F.3d at 1091-92.

SEC also has withheld or redacted the names and email addresses of "government staff conducting investigations," on the theory that they "could face harassment if their names become known in connection with investigations." Stahl Decl. Ex. 16. But public employees "have little, if any, privacy interest in shielding their government-issued email addresses from being disclosed and publicly associated with" controversial matters. *Tex. Pub. Pol'y Found. v. Dep't of State*, 136 F.4th 554, 563 (5th Cir. 2025) (Exemption 6 requires evidence of "creditable concerns" of harassment"). Under either Exemption 6 or 7C, the basis for the asserted privacy interest must be established with creditable evidence. *Socolov*, 2025 WL 4672293, at *2. No such evidence has been presented here.

Finally, in response to Block's repeated requests for records reflecting the substance of Mitts' "Short and Distort" presentations to SEC and DOJ, including any presentation material and notes taken at the presentations, SEC produced a single record: a page from a spiral binder that is completely redacted, except for a single handwritten note reading "8/5/22 Josh Mitts." Stahl Decl. Ex. 24. SEC has represented that this note is from SEC investigator Wendy Pearson, and that none of the other writing on the page related to the presentation. *Id.* ¶ 21. SEC has provided no reason to accept this assertion at face value.

In sum, SEC has failed to meet its burden to justify the withheld records. The Court should find that SEC improperly withheld this material or, alternatively, should exercise its discretion to direct SEC to produce the records for in camera review, as provide by 5 U.S.C. § 552(a)(4)(B), to determine whether the exemptions have been properly asserted. *See Batton*, 598 F.3d at 180 (in camera review appropriate where "there is insufficient factual information from which this court may conclude that the agency satisfied its burden of proof").

**3. SEC Cannot Meet Its Burden To Show Its Search Was Adequate.**

Block also contests the adequacy of SEC's search for record responsive to his FOIA requests. "To meet its summary judgment burden, [an] agency must establish that … its search for the requested material is adequate," by proving it "used 'methods which can be reasonably expected to produce the information requested.'" *Highland Cap. Mgmt.*, 408 F. Supp. 3d at 800, 802 (citing *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). SEC cannot do so here.

For Requests 1904 and 2497, SEC initially communicated with Block's counsel about search terms, then ignored the requests over a year, and failed to produce a single record until well after Block filed suit. *See supra* § II.B.1-2. When it finally began producing records responsive to Request 1904 (more than two years after the request), it purported to declare the response "final" after providing just 15 pages. Stahl Decl. Ex. 15. But its search was not complete; as described in § II.B.1 above, after pushback from Block, SEC identified numerous responsive records through April 2026.

Even now, however, SEC's search remains manifestly incomplete. For example, SEC has failed to produce communications between Mitts and SEC officials that Block *attached to his complaints* in this case. *See* Stahl Decl. ¶ 22 & Ex. 1 pp. 30-73. It also is inexplicable that SEC's search identified calendar invitations showing Mitts gave three joint presentations to SEC

and DOJ between 2021 and 2023, but has not located a single substantive record about them—no presentations, nor internal communications about them, nor substantive notes (other than the one-line handwritten reference in Wendy Pearson's redacted notebook). *See id.* Exs. 8, 9, 24.

These circumstances show SEC's Request 1904 search is incomplete. They also call into question SEC's search under Request 2397, and the credibility of its claim that no records responsive to Request 2498 exist. Given the absence of evidence that the agency conducted a search "reasonably calculated to uncover all relevant documents," *Weisberg v. U.S. D.O.J.*, 705 F.2d 1344, 1351 (D.C. Cir. 1983), the Court should declare SEC in violation of FOIA and direct it to conduct a complete search.

**C. Block Is Eligible for Attorneys' Fees as a Prevailing Party.**

FOIA permits an award of fees for a party who has "substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). A complainant substantially prevails if it receives relief through a judicial order, or through a voluntary change in position by the agency. *Id.* § 552(a)(4)(E)(ii). Reserving all rights to request and establish entitlement to fees at a later date (including based on the outcome of this dispositive motion), Block seeks a ruling at this time that he is a prevailing party due to SEC's voluntary change in position as a result of this FOIA lawsuit. Under this "catalyst theory," a FOIA plaintiff is eligible for fees if his lawsuit "could reasonably be regarded as necessary to obtain the information" and "the action had a substantive causative effect on the delivery of the information." *Batton v. I.R.S.*, 718 F.3d 522, 525 (5th Cir. 2013) (internal quotation marks & citation omitted). A FOIA plaintiff is eligible for attorney's fees on this ground even if the district court ultimately "rules in favor of the government." *Verde v. F.A.A.*, 287 F. Supp. 3d 661, 669 (S.D. Tex. 2018).

In *Batton*, the court found plaintiff's FOIA lawsuit was the catalyst for an agency's change in position, in circumstances comparable to those here. The IRS responded to the

plaintiff's FOIA request with "near-monthly letters to notify him that the agency required additional time to process his request," but produced no responsive documents. 718 F.3d at 524. The Plaintiff served a lawsuit 14 months later, and the government thereafter began serving documents. The Fifth Circuit found the timing established "that the action had a substantive causative effect on the delivery of the information" sufficient to find plaintiff had "substantially prevailed" under 5 U.S.C. § 552(a)(4)(E)(ii). *Batton*, 718 F.3d at 525.

Under *Batton*, Block has substantially prevailed in his claims against the SEC because this lawsuit catalyzed a change in the agency's position, and caused SEC to produce records it had been withholding until Block sued, and for some time after. Block made Request 1904 in May 2022; after receiving no communications for five months or any indication that responsive records were coming, he filed suit in December 2022. SEC finally produced records for the first time in June 2024, under a scheduling order entered by the Court. *See* § II.B.1, *supra.* SEC was just as dilatory with Request 2497: Block made the request in June 2023, and SEC failed to act on it for over a year, responding in July 2024, only because Block had filed the FAC six months earlier. *See supra*, § II.B.2.

Block will address additional issues related to attorneys' fees, including the four-factor entitlement test (*see Batton*, 718 F.3d at 527) and the amount of fees, in a later motion. But the Court should affirm his status as a prevailing party at this time based on SEC's failure to act prior to commencement of this litigation.

## IV. CONCLUSION

For the foregoing reasons, Block respectfully requests that the Court grant summary judgment in his favor and: (1) declare DOJ violated FOIA by issuing a blanket Glomar response to Requests 741 and 545 and by failing to search for responsive records; (2) declare SEC violated FOIA by improperly withholding and redacting records responsive to Request 1904 and by

failing to conduct an adequate search; (3) order both agencies to conduct searches reasonably calculated to uncover all responsive records and to produce all responsive, non-exempt records, together with a Vaughn index of any record withheld in whole or in part, by a date certain, or in the alternative order the withheld records submitted for in camera review; and (4) rule that Block has substantially prevailed and is eligible for an award of attorneys' fees and costs under 5 U.S.C. § 552(a)(4)(E)(ii).

Dated: August 25, 2026

*/s/ Eric M. Stahl*

Eric M. Stahl (*admitted pro hac vice*)
Annie S. Zhang (*admitted pro hac vice*)
Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
(206) 757-8148 (phone)
ericstahl@dwt.com
anniezhang@dwt.com

John Courtade (TX Bar No. 04891200)
8805 Wildridge Drive
Austin, TX 78759
Tel: (512) 502-1135
Fax: (512) 502-1138
Email:johncourtade@johncourtade.com

**Attorneys for Plaintiff**
**CARSON BLOCK**

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of August, 2026, I caused the foregoing Plaintiff's **MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT** to be filed via the court's CM/ECF, which will send notification on all counsel of record in this case.

*/s/Eric M. Stahl*
Eric M. Stahl
(*admitted pro hac vice*)